Filed 7/28/23  Gonzalez v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| AUSTREBERTO GONZALEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B317794<br><br>(Los Angeles County Super. Ct. No. 20STCV35594) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William F. Fahey, Judge.  Affirmed.

Alexander Morrison + Fehr, Tracy L. Fehr; Romero Law, Alan Romero and Edward Wells for Plaintiff and Appellant.

Miller Barondess, Mira Hashmall, Eleanor S. Ruth and Jamil M. Aslam for Defendant and Respondent.

_____

Austreberto Gonzalez (plaintiff) is a Los Angeles County sheriff's deputy. Plaintiff appeals from the judgment entered in favor of his employer, the County of Los Angeles (the County). Plaintiff's operative second amended complaint asserts causes of action against the County for whistleblower retaliation (Lab. Code, §1102.5) and for violations of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.[1]) and the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1). The second amended complaint stems from alleged incidents of discrimination, workplace harassment, and retaliation by fellow deputies and supervisors. Three causes of action were dismissed on demurrer. The others were limited to a time period not barred under Government Code section 911.2 and decided against plaintiff on summary judgment. Plaintiff challenges the rulings on the demurrer and the summary judgment motion, as well as those on discovery issues and costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Facts

Plaintiff was hired as a deputy sheriff by the County in November 2007. He was assigned to the Compton station in January 2015. Plaintiff was divorced and the father of a daughter. She has serious health issues. Plaintiff's work schedule coincided with his court-ordered visitation. He was therefore able to care for his daughter's medical needs.

In 2016, plaintiff began to experience a series of job-related incidents at the Compton station. He attributed the incidents to his refusal to join a deputy gang known as the Executioners.

---

[1] Undesignated statutory references refer to the Government Code.

First, Deputy Jaime Juarez, the deputy in charge of shift scheduling, refused to allow plaintiff to keep his current work schedule. Plaintiff had no choice but to take CFRA/FMLA leave to care for his daughter.[2] According to plaintiff, Deputy Jaime Juarez is a leader of the Executioners.

In 2017, plaintiff was reprimanded and placed on traffic duty after he protested an "illegal quota program" for misdemeanor arrests favored by the deputy gang.

In June or July 2019, plaintiff submitted a formal request to leave the Compton station for the Pico Rivera station. It was placed on hold while one of his traffic stops was being investigated.

In October 2019, plaintiff became a field training officer (FTO). He was assigned his first trainee for three months and received a bonus.

In early February 2020, plaintiff's friend, Deputy Thomas Banuelos, got into a fistfight with another deputy at the Compton station. Banuelos told plaintiff about the fight. The other deputy

---

[2] The California Family Rights Act of 1993 (CFRA), Government Code section 12945.2, entitles eligible employees to take up to 12 unpaid workweeks in a 12-month period for family care and medical leave to care for their children, parents, or spouses, or to recover from their own serious health condition. The CFRA closely parallels its federal counterpart, the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 et seq.), which also provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" due, among other things, to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." (29 U.S.C. § 2612(a)(1)(D).)

was known to be an Executioner. Plaintiff called the internal affairs bureau and reported the fight anonymously.

Master FTO Saul Romero had plaintiff select a new trainee at the training academy. While there, plaintiff was told the Executioners knew he had reported the fistfight to internal affairs. Plaintiff feared reprisals from the deputy gang. He was given time off work. While at home, plaintiff received a text message from another deputy, who was also a friend. The text message included a photograph of graffiti at the Compton station. The graffiti read: " 'ART IS A RAT.' " Plaintiff took more time off.

Later, plaintiff was interviewed twice about the fistfight by a special detail of investigators.

Plaintiff returned to the station in late February. He was called into the office of Sergeant Frank Barragan and relieved of his FTO position. Plaintiff signed a memorandum that he "currently [has] FMLA submitted and approved," was "unable to fully dedicate" himself to his FTO position, and his "family requires [his] undivided attention." Plaintiff's previously selected trainee was taken from him.

Plaintiff asked his captain to be transferred to the Pico Rivera station. He was still fearful. The captain said she could immediately transfer him to the East Los Angeles station, but not to Pico Rivera. Plaintiff declined.

In mid-March to early April 2020, plaintiff was working the day shift. Sergeant Barragan asked if plaintiff could switch to the graveyard shift in exchange for his choice of days off. Plaintiff declined. The shift change would prevent him from caring for his disabled daughter.

On March 26, 2020, plaintiff was deprived of one hour of overtime pay that had not been preapproved.

Plaintiff began receiving excessive calls for service whenever a deputy gang member was working dispatch. Other deputies would not partner with plaintiff because he was an Executioners' target.

In March or April, plaintiff agreed to be "on loan" to the detective bureau to file cases at the courthouse.

Plaintiff was passed over for the position of watch deputy, which he believed was to have gone to him. The deputy who was awarded the position was unqualified and an Executioners member.

On August 20, 2020, a dead rat was left at the home of plaintiff's friend, Deputy Banuelos. Plaintiff was frightened, fearing it was also a threat to him.

On or about August 30, 2020, Sheriff Alex Villanueva identified plaintiff by name during a news interview and said plaintiff was not a whistleblower.

In September 2020, the administrative investigation into plaintiff's traffic stop was completed and he received a written reprimand. Plaintiff was then transferred to the Pico Rivera station, where he is still assigned, but on medical leave.

## II.   Proceedings

Plaintiff filed a government claims letter, which was largely rejected as untimely. Months later, he filed an administrative complaint with and received a right-to-sue letter from the Department of Fair Employment and Housing under FEHA.

Plaintiff initiated this suit in September 2020. After stipulated extensions to file amended complaints, the second

5

amended complaint became the operative complaint.[3]  It alleged six causes of action for damages, four of which are claims under the FEHA: (1) associational disability discrimination (Gov. Code, §§ 12926, subd. (o), 12940, subd. (a)); (2) harassment and/or hostile work environment (*id.*, §§ 12923, 12926, subd. (o)); (3) workplace retaliation (*id.*, § 12940, subd. (h)); and (4) failure to prevent retaliation (*id.*, § 12940, subd. (h)).  The fifth cause of action alleged whistleblower retaliation (Lab. Code, § 1102.5).  The sixth cause of action alleged a violation of the Bane Act (Civ. Code, § 52.1).

Following the County's demurrer, three causes of action remained in the second amended complaint:  workplace retaliation and failure to prevent retaliation under FEHA and whistleblower retaliation under Labor Code section 1102.5.  The trial court found the causes of action rested on many alleged events that were time-barred.  The events had occurred years before plaintiff's submission of his government claims letter.  (Gov. Code, § 911.2.)  The court limited plaintiff's remaining causes of action to alleged events that were timely—specifically his February 2020 report of the fight between two deputies and allegations of subsequent retaliation.  The court declined to allow plaintiff leave to amend.

---

[3] In response to the County's demurrer to the second amended complaint, rather than file opposition, plaintiff attempted to file an unauthorized third amended complaint.  The trial court dismissed the County's unopposed demurrer without leave to amend and dismissed the case.  Later the court granted plaintiff's motion for relief from dismissal and considered his late opposition to the demurrer.

The parties stipulated to a protective order, which the court signed on June 25, 2021.

On July 29, 2021, the County moved for summary judgment, or alternatively, summary adjudication of issues.

On August 21, 2021, plaintiff moved to compel the County's responses to written discovery and for an in-camera review of law enforcement personnel records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d. 531 (*Pitchess*). Within the week, plaintiff filed an ex parte application to continue the summary judgment hearing for further discovery. On September 20, 2021, plaintiff filed a motion to compel the deposition testimony of Deputy Jaime Juarez.

On September 23, 2021, the trial court denied plaintiff's first motion to compel except for one interrogatory response. The court denied the *Pitchess* motion and the application to continue the summary judgment hearing. Days later, plaintiff filed his opposition to the summary judgment motion.

On October 8, 2021, the trial court advanced the motion to compel Juarez's deposition and took it off calendar because plaintiff had failed to provide the court with a courtesy copy.

Following a hearing in November 2021, the trial court granted summary judgment for the County.

Shortly thereafter, the County filed a memorandum of costs, and plaintiff moved to strike costs. Ultimately, the court awarded costs to the County in the amount of $13,943.

Plaintiff timely filed an appeal in which he contests most of the trial court's rulings. We discuss each ruling in turn.

**DISCUSSION**

I.   **Sustaining the Demurer to the Second Amended Complaint**

   A.   **Applicable Law and Standard of Review**

A general demurrer challenges whether the allegations of a complaint are sufficient to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e); *SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 316.) In opposing a demurrer, "the plaintiff must show the complaint alleges facts sufficient to establish every element of each cause of action." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) In assessing the sufficiency of the allegations, the trial court must accept the truth of all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law, and may also consider matters that may be judicially noticed. (*SLPR, supra,* 49 Cal.App.5th at p. 316.)

Our review is de novo. We independently determine whether the operative pleading states a cause of action as a matter of law. We give "the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) We review the trial court's result for error, not its legal reasoning. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

The second amended complaint is far from a model pleading. Instead of stating the elements for each cause of action and the factual allegations to support them, plaintiff includes

8

irrelevant information,[4] adopts a shotgun pleading format,[5] and in numerous instances, relies on conclusions rather than factual allegations.[6]  Indeed, the second amended complaint is peppered

---

[4] For example, the second amended complaint describes at length the genesis and impact of the "illegal arrest quotas" and the on-duty interaction between other deputies and supervisors unrelated to plaintiff's claims.

[5] "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations.  They are unacceptable." (*Sollberger v. Wachovia Securities, LLC* (C.D.Cal. June 30, 2010, No. SACV 09-0766) 2010 U.S. LEXIS 66233, \*11 [2010 WL 2674456]); *Mason v. County of Orange* (C.D.Cal. Aug. 19, 2008, No. SACV 08-0235) 251 F.R.D. 562, 563–564.)  For example, the first, third, and fifth causes of action set forth a laundry list of adverse employment actions attributed to the County:  Plaintiff was "(1) asked impermissible non-job-related questions; (2) demoted; (3) denied any employment benefit or privilege; (4) denied family care or medical leave (CFRA); (5) denied hire or promotion; (6) denied or forced to transfer; (7) denied work opportunities or assignments; (8) reprimanded; and/or (9) being subjected to a threat of being murdered for being a witness to illegal acts and protesting same."  The second amended complaint's "Factual Allegations" section and fifth cause of action set forth numerous provisions of the sheriff's department Manual of Policies and Procedure and local, state, and federal laws or regulations unencumbered by any explanation as to their substance or how they pertain to the alleged causes of action.

[6] For example, the second amended complaint alleges the Compton station "has been permeated by a violent Deputy gang which calls itself 'The Executioners,' " and "operate[s] . . . with impunity, its members use violence against other Deputies and members of the public in order to increase their standing within

9

with years of allegations detailing a litany of events and acts, with virtually no effort to specify the facts that support each cause of action.

B. **Section 911.2 Limitation of the Government Claims Act and the Continuing Violation Doctrine**

Based on the six-month time limitation in section 911.2, subdivision (a) of the Government Claims Act (§ 810 et seq.), the trial court ruled that plaintiff was barred from pursuing any causes of action based on misconduct predating December 16, 2019—six months before the submission of the Government Claims letter with the County.[7]

Section 911.2 requires a plaintiff to present a claim for money or damages to a public entity as a condition precedent to pursuing a lawsuit. As relevant here, personal injury claims must be presented no later than six months after the accrual of the cause of action or be barred. (§ 911.2, subd. (a);[8] *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118.)

---

the criminal organization." The complaint further alleged the County engaged in a "Sham Investigation" of his reports to the internal affairs bureau without supporting facts.

[7] Although the government claims letter was filed on June 23, 2020, the trial court used June 16, 2020, the date plaintiff signed the letter, to compute the six-month period.

[8] Section 911.2, subdivision (a) reads: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) not later than one year

10

The parties agree that Government Code section 911.2 should not have been applied to the FEHA causes of action. However, plaintiff wrongly claims FEHA's current three-year limitation, rather than FEHA's one-year limitation then in effect, applies. The FEHA causes of action were limited to actionable allegations arising from conduct occurring September 15, 2019, to September 15, 2020. (Gov. Code, § 12960, former subd. (d); *Pollack v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 929.) The causes of action for violation of Labor Code section 1102.5 and the Bane Act were limited to actionable allegations arising from conduct occurring after December 16, 2019.

In any event, a complaint must allege facts that demonstrate timely presentation of a claim or that belated presentation is excused to avoid being subject to a demurrer for failure to state a cause of action. (*Willis v. City of Carlsbad, supra,* 48 Cal.App.5th at p. 1119; see also *Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1415 [affirming order sustaining a demurrer and holding "the continuing violations doctrine is inapplicable" to a disability discrimination claim].)

---

after the accrual of the cause of action." Section 901 provides that "[f]or the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 945.6, and 946.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon."

11

Plaintiff invoked the continuing violation doctrine in the second amended complaint as a basis for asserting his allegations were not time-barred. Putting aside the initial claim presentation deadlines of section 911.2 and FEHA, the question is whether the continuing violation doctrine applies to salvage the misconduct plaintiff alleged to have occurred in 2016 and 2017. The continuing violation doctrine "allows liability for unlawful . . . conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*); see also *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056.)

For the continuing violation doctrine to apply, the plaintiff must show (1) the misconduct occurring within the limitations period is similar in kind to the misconduct that falls outside the period; (2) the misconduct was reasonably frequent; and (3) it had not yet acquired a degree of permanence. (*Richards, supra,* 26 Cal.4th at p. 823.) "Permanence" in this context means that an employer's actions make clear to a reasonable employee that any further efforts to end the alleged unlawful conduct will be futile, or the employer "mak[es] clear to the employee in a definitive manner" that the employee's requests have been rejected. (*Ibid.*)

The earlier misconduct claimed by plaintiff consists of being refused certain days off by Deputy Juarez for scheduled childcare in 2016 and being reprimanded and transferred to traffic duty in 2017 after protesting the arrest quotas. We need not address whether these acts, while different in kind, are sufficiently closely related to constitute a continuing violation of the acts claimed within the one year (FEHA) or six months (§911.2). (*Dominguez v. Washington Mutual Bank* (2008) 168

12

Cal.App.4th 714, 722.) Neither alleged act acquired a degree of permanence to preclude the application of the continuing violation doctrine. According to the second amended complaint, plaintiff was reassigned to an FTO position in October 2019. In 2020, plaintiff was offered his choice of days off if he accepted the graveyard shift, which he turned down. And plaintiff was never denied his requested days off in 2020, and he continued to receive his intermittent CFRA/CMLA leave. We agree with the trial court in rejecting the application of the continuing violation doctrine.

### C. Causes of Action: Elements and Sufficiency of the Allegations

Plaintiff argues the trial court erroneously ruled his causes of action for associational disability discrimination and violation of the Bane Act did not withstand demurrer.[9] We disagree.

### 1. Associational disability discrimination

Plaintiff's first cause of action is for associational disability discrimination. It is an unlawful employment practice under the FEHA to discriminate against any person because of a physical or mental disability. (§ 12940, subd. (a).) Associational disability discrimination prohibits discrimination against persons who are so closely associated with a disabled person that they are, in effect, disabled for purposes of employment under FEHA. (*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1036 (*Castro-Ramirez*).) A prima facie case based on associational disability discrimination requires a showing that: "(1) the plaintiff suffered from a disability, (2) the

---

[9] Plaintiff does not contest the dismissal of the cause of action for harassment and/or hostile work environment.

13

plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability." (*Id.* at p. 1037.)  Under the third element, "the disability must be a substantial factor motivating the employer's adverse employment action." (*Ibid.*; see *Castro-Ramirez, supra,* at pp. 1042–1043 [holding that an employee had associational disability claim for being terminated after requesting scheduling accommodations to administer daily dialysis to his disabled son]; *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 642 (*Rope*) [holding that an employee had a claim for associational disability discrimination after he was fired for requesting time off to donate a kidney to his ailing sister].)  In addition, effective January 1, 2016, section 12940, subdivision (m)(2) prohibits an employer from discriminating or retaliating against an employee for requesting accommodation for associational disability, "regardless of whether the request was granted."

The gravamen of this cause of action appears to be that plaintiff was being discriminated against because Deputy Juarez denied plaintiff his original childcare schedule.  Plaintiff was not fired, unlike the *Castro-Ramirez* and *Rope* plaintiffs.  Instead, plaintiff received the CFRA/FMLA leave to which he was entitled.  This is not an adverse employment action.

Plaintiff alleges his association with his disabled daughter was a "substantial factor" in subjecting him to one or more of nine adverse employment actions.  However, no supporting facts are alleged demonstrating "a causal link" between plaintiff's taking leave to care for his daughter and any of the assorted

14

adverse actions he alleges. The cause of action for associational disability discrimination fails as a matter of law.

### 2. Bane Act violation

The sixth cause of action is based on an alleged violation of Civil Code section 52.1, known as the "Tom Bane Civil Rights Act." The Bane Act provides a private cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with" by a person "whether or not acting under color of law," who uses "threat, intimidation, or coercion." (Civ. Code, § 52.1, subds. (a)–(c).)

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883.) A violation of the Bane Act does not require any discriminatory animus. (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 843.)

The specific allegations plaintiff states as the basis for his Bane Act cause of action are that County employees threatened "to murder [him]." The only bases for that allegation were the "ART IS A RAT" graffiti written on the entry gate key pad while plaintiff was off work and the dead rat delivered to a fellow deputy and friend. (Nothing in the second amended complaint states why the rat was not presumed to have died either of natural causes or as the victim of a nonhuman animal.) In any event, there was no factual allegation of any physical threat,

15

intimidation, or coercion made directly against plaintiff by anyone. A plaintiff must be personally threatened; there is no derivative liability for individuals who are not present and witnessing the actionable conduct. (*Bay Area Rapid Transit Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 144 [Bane Act is "limited to plaintiffs who themselves have been the subject of violence or threats"].)

Even assuming the graffiti and dead rat amounted to a sufficient threat of murder as plaintiff argues, nowhere does the second amended complaint identify the violation of rights amenable to Bane Act enforcement. Instead, there is only a general reference to plaintiff's "protected whistleblowing activities" and his "protest[s]" about FEHA violations by the County. Because the Bane Act cause of action "is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) " '[T]he plaintiff must set forth facts in his complaint sufficiently detailed and specific to support an inference that each of the statutory elements of liability is satisfied. General allegations are regarded as inadequate.' " (*Shields v. County of San Diego* (1984) 155 Cal.App.3d 103, 112.) Accordingly, plaintiff's Bane Act cause of action fails as a matter of law.

### D. The Court's Time Limitation on the Remaining Causes of Action

Plaintiff asserts the trial court committed reversible error by limiting the three remaining causes of action to include only timely allegations. This was improper, plaintiff argues, because a demurrer does not lie to part of a cause of action. (*Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932, 944.)

Plaintiff did not raise this argument in the trial court. It has thus been forfeited on appeal. (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191–1192 [forfeiture applied to plaintiff's argument not raised in opposition to demurrer]; *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567–568 [finding courts are not required, and may properly decline, to consider arguments not raised in demurrer even if based on purely legal questions].)

Nonetheless, we note the alleged 2016 and 2017 events did not survive the continuing violation doctrine. The trial court's limitation of the remaining causes of action to plaintiff's report of the fight in 2020 was in keeping with the timeline of actionable events from February to September 2020 and did not prejudice plaintiff.

### E.     Denial of Leave to Amend

Leave to amend a complaint is entrusted to the sound discretion of the trial court, and " ' "[t]he exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." ' " (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.) Plaintiff argues the trial court abused its discretion in denying him leave to amend because an amendment would clear up the court's "confusion as to timing and the connection between protected activities and adverse actions."

At the hearing on the demurrer, plaintiff urged that he should be given leave to amend to add a claim that he was a victim of racial discrimination under FEHA. Plaintiff argued that, as a Hispanic, he was the victim of racial discrimination by a predominantly Hispanic gang, who had targeted him because he had refused to join his fellow Hispanics. The court pointed out that plaintiff had not included this theory in his government claim letter or administrative complaint or in previously filed pleadings.

17

In denying leave to amend, the trial court remarked that plaintiff already attempted to file four complaints with no substantive changes.  The court added that allowing another opportunity to amend would be futile because plaintiff failed to show the dismissed causes of action could be amended to state viable claims.

## II.  Discovery Motions

Plaintiff next disputes the correctness of the denial of his motions to compel production of written discovery and Deputy Juarez's deposition testimony.  He also contests the denial of his *Pitchess* motion, which we discuss separately.  We perceive no error.

### A.  Additional Background

The parties engaged in several rounds of discovery. Plaintiff propounded extensive written discovery to the County. Between June and August 2021, the parties exchanged "meet and confer" e-mails and letters concerning the County's responses and objections to the written discovery.  In the meantime, on July 9, 2021, plaintiff's counsel sent a letter to the County to coordinate proposed video-deposition dates for 19 employees of the sheriff's department, including then-Sheriff Alex Villanueva.  Plaintiff's counsel stated the depositions were to be used in five named cases that were pending against the County.  On July 19, 2021, the County's counsel e-mailed plaintiff's counsel, rejecting the proposal.  She asked him to designate the depositions he was noticing for the instant case only and agreed to follow up with available dates.  Plaintiff's counsel stated he wanted all 19 depositions, the County's counsel began scheduling them, with

the exception of the apex depositions of the sheriff and undersheriff.[10]

After taking plaintiff's video deposition in June, the County filed a motion for summary judgment on July 29, 2021.

On August 11, 2021, plaintiff's counsel began taking Deputy Juarez's video deposition. After the County's counsel instructed Juarez not to answer multiple questions, she halted the deposition. In response, plaintiff's counsel canceled all scheduled depositions.

On August 23, 2021, plaintiff filed a motion to compel written discovery. Two days later, plaintiff filed a *Pitchess* motion. On September 20, 2021, plaintiff moved to compel Deputy Juarez's deposition testimony. All three motions were opposed by the County. All three motions were denied by the trial court.

## B. Motions to Compel: Standard of Review

"We review a trial court's discovery orders for an abuse of discretion. ' " 'The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' " ' " (*MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045.)

---

[10] Under the "apex deposition doctrine" or "apex witness rule," the plaintiff must show the apex official of the defendant corporation or government agency has unique or superior personal knowledge that is unobtainable through less intrusive discovery means. (*Liberty Mutual Ins. Co. v. Superior* Court (1992) 10 Cal.App.4th 1282, 1287–1290 [corporation]; *Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1467–1468 [government agency].)

19

### C. Orders Denying Motions to Compel

#### 1. Trial court did not abuse its discretion in denying the motion to compel written discovery

Plaintiff moved to compel the County's responses to two sets of special interrogatories, one set of form interrogatories, one set of requests for admission, and one set of requests for production of documents. At the August 30, 2021 hearing, plaintiff's counsel did not deny the discovery requests were broad. He explained to the trial court that the civil discovery rules allowed him to conduct broad discovery ("a fishing expedition") that may prove relevant in his other pending cases. Nor is such discovery limited to the narrow issues imposed by the court. In his written motion, counsel argued the facts and circumstances of the leak of the voice recording of the deputies' fight that are at issue in this case. According to his "cat's paw" theory of causation,[11] "the Executioners illicitly obtained a recording of the call" and used it and their influence to retaliate against him.[12]

---

[11] Under the cat's paw theory, the actor who acted without animus "may be found to have operated as a mere instrumentality or conduit for others who acted out of discriminatory or retaliatory animus, and whose actions were a but-for cause of the challenged employment action." (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112–113; see also *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 461.)

[12] Plaintiff asserted: "Thus, the following topics are fair game for discovery: the Executioners gang, its leadership, membership, aims, actions, motivations, and the same for its individual members; the command influence, if any, wielded by the Executioners or particular Executioners members, whether to

In denying the motion, the trial court reminded plaintiff's counsel of the narrow scope of the litigation and admonished him not to engage in discovery exceeding the previously ordered parameters: "for the several months at issue, his reporting of the hearsay incident, and whether, if at all, he was retaliated against."

There was no abuse of discretion. First, had plaintiff wanted to depose witnesses that were also named in five "other cases" represented by "other attorneys," he could have filed a motion under Code of Civil Procedure section 1048, subdivision (a). The statute provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." (See, e.g., *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1293 [cases consolidated for discovery and pretrial matters]; *Austin B. v. Escondido Unified School Dist.*, *supra*, 149 Cal.App.4th at p. 870 [cases

---

Plaintiff's detriment or otherwise; the ratification of misconduct of the Executioners or its members by the Sheriff's Department, whether to Plaintiff's detriment or otherwise; Sheriff Villanueva's public comments qua Sheriff about Plaintiff and the factual merit of Plaintiff's case; the documents and communications in the County's possession relating to Plaintiff's case. Jaime Juarez is the leader of the Executioners, and has wielded undue command influence on multiple occasions, on behalf of himself and the Executioners. . . . Thus, discovery into the County's special treatment of him, including re-authorizing him to carry a firearm and return to patrol duties is within the scope of discovery of this case."

consolidated for discovery and trial]; *Frieman v. San Ravael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 33 [cases consolidated for discovery and pretrial determinations].)  Plaintiff cites no authority obligating the County to agree to written discovery or depositions that would possibly serve to obtain relevant discovery in other cases.

Second, plaintiff's arguments to justify conducting wide-ranging discovery were extensive.  However, such arguments manifested a palpable failure to acknowledge the limits of the scope of litigation imposed by the court.  None of plaintiff's written discovery, excepting special interrogatory 35, were even remotely addressed to the dispositive issue of whether plaintiff was retaliated against by the County as a result of his report of the fight.  Most discovery was aimed at the nature and extent of the alleged Executioners' existence, practices, and authority in the sheriff's department and the City of Compton, which were irrelevant to his cat's paw theory as it pertained solely to his hearsay report of the deputies fight and ensuing retaliation.  (See Code Civ. Proc., § 2017.010 [discovery allowed only where the matter is relevant in the pending action].)  Ultimately, the court compelled the County to respond to special interrogatory 35, regarding the chain of custody for plaintiff's recording of his report of the deputies' fight.

### 2. The trial court did not abuse its discretion in denying the motion to compel Deputy Juarez's deposition testimony

The trial court advanced the motion to compel Deputy Juarez's deposition testimony and took it off calendar.  Despite repeated admonishments to comply with court rules, plaintiff's counsel failed to submit required courtesy copies to the court.

22

Plaintiff contends the trial court abused its discretion by resolving the motion on procedural grounds rather than on the merits. We are not persuaded.

"Every court has the inherent power, in furtherance of justice, to regulate the proceedings of a trial before it; to effect an orderly disposition of the issues presented; and to control the conduct of all persons in any manner connected therewith. [Citations.] The exercise of this power is a matter vested in the sound legal discretion of the trial court, subject to reversal on appeal only in those instances where there has been an abuse of that discretion." (*People v. Miller* (1960) 185 Cal.App.2d 59, 77; see also *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351.) A litigant's failure to comply with local court rules may properly result in a court's refusal to consider the litigant's position. (See *People v. Lewis* (1977) 71 Cal.App.3d 817, 820–821.)

Plaintiff attacks the conduct of the County's counsel in representing Juarez during his deposition. However, plaintiff fails to show the trial court abused its broad discretion. Nor does he defend his own counsel's repeated failure to comply with the court's rules. We find no abuse of discretion in these circumstances.

### D.    Order Denying the *Pitchess* Motion

Plaintiff contends the trial court prejudicially erred in denying his *Pitchess* motion, which sought to compel discovery of information from the personnel files of 17 sheriff's deputies. Not so.

Generally, the personnel files of a law enforcement officer are confidential and precluded from discovery in any legal proceeding. (Pen. Code, §832.7, subd. (a).) Under *Pitchess* and its progeny, however, discovery of certain information in the

23

personnel files of an officer accused of misconduct is permitted upon a showing of good cause.  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016; *Pitchess, supra*, 11 Cal.3d at pp. 536–538.)  Requiring a showing of good cause serves to balance a litigant's right to discovery and an officer's right to privacy.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81–84.)  "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' "  (*Warrick, supra*, 35 Cal.4th at p. 1016.)

We review the trial court's summary denial of discovery of information from police officer personnel records for an abuse of discretion.  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

Having examined plaintiff's *Pitchess* motion in its entirety, we agree with the trial court.  While the good cause showing is "relatively relaxed," plaintiff has failed to meet it.  There is no materiality because there is no evidentiary connection between the limited issues in this case and the information he seeks.

The County offered to provide plaintiff one item he sought in his motion—the list of March 2020 qualified watch deputy candidates.  It is unclear whether plaintiff pursued this discovery.  Plaintiff also sought the deputies' use-of-force history.  We note use-of-force incidents by law enforcement leading to serious bodily injury or death were available at the time under Penal Code section 832.7, former subdivision (b)(1)(A) through California's Public Records Act.  (Gov. Code, former § 6250 et seq., repealed eff. Jan. 1, 2023, now *id.*, § 7920.000 et seq.)

24

## III.  Motion for Summary Judgment

The County moved for summary judgment/summary adjudication on the remaining three causes of action:  workplace retaliation and failure to prevent retaliation under FEHA and whistleblower retaliation under Labor Code section 1102.5.  As the trial court previously ruled, the litigation was limited to plaintiff's " 'claim that he reported a fight between two deputies and was thereafter subject to retaliation.' "

### A.  Supporting Evidence, Objections, Rulings

In support of its motion, the County filed a "Compendium of Evidence" and a "Separate Statement of Undisputed Facts." The evidence included declarations of Deputy Romero, Master FTO, and Sergeant Rene Barragan of the sheriff's department, partial transcripts of plaintiff's depositions, photographed text messages from plaintiff, and his responses to written discovery. Plaintiff's opposition papers included an "Opposition Separate Statement" and an "Index of Evidence in Opposition" to the motion.  The evidence consisted of declarations of plaintiff, Lieutenant Waldie, and former Commander Robert Olmsted of the sheriff's department, excerpted public statements of former Sheriff Alex Villanueva, and partial transcripts of plaintiff's depositions.  Plaintiff also filed over 100 "Additional Material Facts in Dispute."

The trial court sustained most of the County's objections to plaintiff's and Olmsted's declarations.  The court also struck plaintiff's additional material facts as neither material nor pertaining to the court-ordered time frame, and his Opposition Separate Statement as based on argument or objections.  The court overruled plaintiff's objections to the evidence in the

County's Separate Statement of Undisputed Facts as "noncompliant" with California Rules of Court, rule 3.1354(b).

Plaintiff does not challenge these rulings on appeal.

Following the hearing, the court granted the County's motion for summary judgment, concluding the County had carried its burden on each of plaintiff's causes of action and plaintiff had failed to raise a triable issue of material fact as to any of them.

### B. Standard of Review

A motion for summary judgment or summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment or summary adjudication de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703.)

### C. Plaintiff's FEHA Retaliation Causes of Action

FEHA protects an employee from retaliation who has "blown the whistle" on a discriminatory employer practice forbidden by section 12940, subdivision (a), e.g., discrimination based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decisionmaking, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age,

26

sexual orientation, or veteran or military status." The elements of a FEHA retaliation cause of action are: (1) the plaintiff engaged in a protected activity; (2) the employer subjected the plaintiff to an adverse employment action, and (3) a causal link exists between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1042.) An employee engages in protected activity when she or he has opposed any practices forbidden under FEHA, or testified, or assisted in any proceeding under FEHA. (§ 12940, subd. (h).) An employer who discharges, expels, or otherwise discriminates against an employee for having engaged in protected activity has committed an adverse employment action. (*Ibid.*)

The County argued plaintiff could not satisfy a prima facie case for protected activity, much less a claim for FEHA retaliation. Plaintiff acknowledged the fistfight he reported was unrelated to FEHA violations or discrimination. Instead, he testified, the fight allegedly occurred because one deputy was angry with plaintiff's friend for injuring another deputy in a traffic collision and failing to detain an armed suspect. Reporting the fight was not forbidden FEHA activity.

As for any adverse employment actions, the county argued far from being able to show a nexus between any protected activity and adverse employment actions, plaintiff could not show he suffered any adverse employment actions at all under FEHA. Plaintiff's deposition testimony shows he became an FTO in 2019, supervised a trainee for three months, and was paid the standard bonus until his phase of the supervision ended. Like all FTO's, plaintiff received the bonus only when he was training. In January 2020, there were no more trainees available, and plaintiff welcomed "a break." When deposed, plaintiff testified

that he was not demoted from his FTO position, he was just no longer receiving the bonus. Plaintiff acknowledged during deposition that he was currently listed as an FTO for the sheriff's department. He had not been assigned a trainee, but he had not ask for one either. In his declaration, Master FTO Romero confirmed he told plaintiff when he was ready to supervise he would be assigned a trainee.

In June or July 2019, plaintiff requested a transfer to the Pico Rivera station. During deposition, plaintiff testified that although he "loved working in [Compton] at that station," he felt "it was enough time to do five years at a fast station." Plaintiff's transfer was put on hold because of an investigation into an on-duty traffic stop he conducted in September 2020. Plaintiff testified that was standard procedure.

In March 2020, plaintiff asked to be transferred out of the Compton station. His captain said she could transfer him overnight to the East Los Angeles station, but she had no authority to move him to the Pico Rivera station, which was out of the district. Plaintiff declined, saying "[h]owever long it took," he wanted to go to the Pico Rivera station.

Plaintiff testified that in April or May 2020, Lieutenant Ruiz offered "to send [him] on loan" to the detective bureau to file cases for the station. Ruiz said the assignment is "almost the same hours" so plaintiff would "keep the same shift." Plaintiff accepted the transfer. Plaintiff testified the filing position involved a lot of paperwork, but "it wasn't bad" and he "learned some things." When the investigation into his traffic stop was completed in September 2020, plaintiff was transferred to the Pico Rivera station. He is still assigned at that station, although

28

he is out "on medical leave."  Plaintiff is a "deputy sheriff generalist."  He has not applied for a promotion since 2020.

This evidence shifted the burden to plaintiff to raise a triable issue of fact on the issues of the alleged FEHA retaliation cause of action.  (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 361 [an employer moving for summary judgment on a FEHA cause of action may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors]; *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 [same].)

Plaintiff did not address the protected activity element other than to assert the fistfight related to "the Executioners and intra-station politics."  Instead, plaintiff argued triable issues of material fact exist as to whether he suffered adverse employment actions in retaliation for reporting the fight— specifically being forced out of the FTO position, denied a trainee, and "relegated to the junior position of Assistant Filing Deputy."

Plaintiff testified that other deputies knew about the anonymous report within days of his call to internal affairs, although he had believed it would remain confidential.  Then, as an FTO, plaintiff was told to select a new trainee, and he did so on February 13, 2020.  Shortly thereafter, Sergeant Barragan met with plaintiff and said, while he understood plaintiff needed to take CFRA/FMLA leave, plaintiff's absences were a disservice to trainees.  Plaintiff could choose either to remain an FTO and be subject to "documenting" (for potential discipline), or he could relinquish his FTO position in writing.  Sergeant Barragan had

29

prepared the memorandum, which plaintiff edited slightly before signing. The memorandum was "not accurate" in stating that plaintiff had to stop supervising trainees because of CFRA/FMLA leave and family needs. As a result of the memorandum, plaintiff was not able to supervise his chosen trainee. According to Lieutenant Waldie's declaration, it is a demotion for an FTO to have his trainee taken away and to be denied any future opportunities to supervise a trainee. Plaintiff named other FTO's whose greater number of absences were not considered an issue for trainees. Plaintiff acknowledged being unaware of their individual circumstances.

In his declaration, Lieutenant Waldie stated that it is a demotion for an FTO to be moved to assistant filing deputy. For that reason, plaintiff argues he suffered an adverse employment action.

We conclude the trial court properly found there was no evidence of any adverse employment actions to support a FEHA violation. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1009 [triable issue of fact as to whether employer's reasons for termination were unwise or incorrect is immaterial; the proper question is whether termination violated FEHA].) An adverse employment action " 'materially affect[s] the terms and conditions of *employment*.' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1161, quoting *Yanowitz v. L'Oreal USA, Inc., supra,* 36 Cal.4th at p. 1051, fn. 9, italics added by *Featherstone*.) "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455.) " 'If every minor change in working conditions or trivial action were a materially adverse

30

action then any "action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." [Citation.]' [Citation.] The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiff's employment." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386.)

As for the FTO position, as stated, plaintiff insists that Sergeant Barragan forced him to relinquish the position and typed the memorandum to that effect. Barragan and Master FTO Romero attested in their declarations that it was plaintiff's idea to "pause" his FTO duties and plaintiff typed the memorandum himself. That evidentiary conflict is beside the point. There is no triable issue of fact that plaintiff was never told he could not return as an FTO, was paid while he was an FTO, is still identified by the sheriff's department as an FTO, and has not asked to reassume his position as an FTO. There was no adverse employment action.

Whether the position of assistant filing deputy is a "demotion" or a subordinate position does not raise a triable issue of material fact. Although plaintiff did not request the transfer, it was offered to him. This happened while his transfer to the Pico Rivera station was pending. Plaintiff points to *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378 [disapproved on another ground in *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712, 718, fn. 2] as dispositive. However, that case does not help him for many reasons, the least of which is it involved a transfer that was not voluntarily accepted. (*Patten*, at p. 1382.) Further, the case does not support the proposition that assignment to a less preferred position alone constitutes an adverse employment action.

31

Finally, even if there were solid undisputed evidence to support plaintiff's claim that he was retaliated against by the Executioners, the FEHA antiretaliation provision does not protect against retaliation for opposing conduct that is not forbidden by FEHA—like reporting the fistfight. (*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 950.)

FEHA creates an actionable tort for an employer's failure to take all reasonable steps to prevent unlawful discrimination, harassment, or retaliation, which is plaintiff's second FEHA cause of action. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 286; §12940, subd. (k).) It is, however, a derivative claim; a failure to prevent cause of action necessarily requires the underlying unlawful retaliatory conduct. Without it, the employer cannot be held liable. (*Trujillo*, at p. 289.)

### D. Plaintiff's Whistleblower Retaliation Cause of Action under Labor Code Section 1102.5.

By its very terms, Labor Code section 1102.5, subdivision (b) prohibits employer retaliation when an employee discloses information if the employee "has reasonable cause to believe" that the information discloses a violation of a statute, rule or regulation. (See Lab. Code, § 1102.5, subd. (e) [which applies to "[a] report made by an employee of a government agency to their employer"].) Thus, an employee engages in protected activity when he or she reports " ' "reasonably based suspicions" of illegal activity.' " (See *Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1345.)

"The elements of a [Labor Code] section 1102.5(b) retaliation cause of action require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the

32

plaintiff show this explanation is merely a pretext for the retaliation."  (*Patten v. Grant Joint Union High School Dist., supra,* 134 Cal.App.4th at p. 1384.)  The first element, establishing a prima facie case, requires a plaintiff to show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two.  (*Ibid.*)

As discussed, no genuine issue of material fact exists that plaintiff was subjected to an adverse employment action. Summary judgment was proper.  For that reason, we need not decide whether plaintiff was engaged in protected activity for purposes of a Labor Code section 1102.5 violation.  Plaintiff did not witness the fight he reported; he was told about it.  Plaintiff maintained he was calling internal affairs about a crime, assault and battery, a violation of state law.[13]  However, rather than acting as a whistleblower, plaintiff's conduct could be construed as complaining about an internal personnel matter between two work colleagues.  (See *Patten v. Grant Joint Union High School Dist., supra*, 134 Cal.App.4th at p. 1385.)

## IV.    Award of Costs

The trial court denied plaintiff's motion to strike the County's costs and awarded the County $13,943.84 in costs.  An award of fees to a defendant is appropriate under section 12965, subdivision (c)(6) when " ' "the action brought is found to be unreasonable, frivolous, meritless or vexatious." ' "  (*Bond v.*

---

[13] The cause of action does allege plaintiff suffered adverse employment actions for "protesting or opposing" violations of Penal Code section 240 (assault) and Penal Code section 243, subdivision (d) (aggravated battery), which suggests protected activity.

*Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 921–922); see *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387.) "Meritless" is defined as "groundless or without foundation, rather than simply as the fact that the plaintiff ultimately lost." (*Bond, supra*, at p. 922.) " '[V]exatious' does not imply that plaintiff's subjective bad faith is a necessary prerequisite to an award of attorney fees to defendant" (*ibid.*), but " 'if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.' " (*Id.* at p. 925.) We review the trial court's ruling for an abuse of discretion. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989.)

Following a hearing, the trial court issued a lengthy minute order expressly finding that plaintiff's action was "frivolous, unreasonable, and groundless," and detailing its reason for those findings. Plaintiff does not seriously dispute the court's findings on appeal, merely contending that reversal of the summary judgment requires reversal of the cost award for the County.

Having reviewed the entire record, we agree with the trial court for the reasons it stated. There was no abuse of discretion. Additionally, we are troubled by the conduct of plaintiff's counsel toward both the County's counsel and particularly the court. We appreciate the vigorous advocacy of attorneys in representing their clients, but sarcasm, personal attacks, and an obvious lack of respect are not acceptable in the courtroom. Such behavior undermines the attorneys' credibility and hurts the clients.

## DISPOSITION

The judgment is affirmed.  The County is entitled to its costs on appeal.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.